IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Jackson Division

| | | |
|---|---|---|
| NYKOLAS ALFORD and STEPHEN THOMAS; and ACLU OF MISSISSIPPI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 3:16cv350 DPJ–FKB |
| JUDY MOULDER, in her official capacity as MISSISSIPPI STATE REGRISTRAR OF VITAL RECORDS, | ) ) ) ) ) | |
| Defendant. | | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. iii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

ARGUMENT ................................................................................................................................. 8

   I.    Plaintiffs Have Article III Standing. ................................................................................. 8

     A.  Plaintiffs Will Suffer a "Concrete and Particularized" "Injury in Fact" if HB 1523 Is Enforced. ......................................................................................................................... 9

     B.  Plaintiffs' "Injury in Fact" Is "Imminent" and Not "Conjectural or Hypothetical." ...... 11

     C.  Plaintiffs' Injury Is Traceable to Defendant and Will Be Redressed By Enjoining Defendant from Enforcing HB 1523. .............................................................................. 14

     D.  The ACLU of Mississippi Has Associational Standing on Behalf of Its Members. ........ 15

   II.   Plaintiffs' Motion for Preliminary Injunction Should Be Granted ................................. 16

     A.  Plaintiffs Have Established a Substantial Likelihood of Success. .................................. 17

     B.  Plaintiffs Have Satisfied the Remaining Preliminary Injunction Factors. ...................... 19

CONCLUSION .............................................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) ............................................... 10, 12, 16

*Allen v. Wright,* 468 U.S. 737 (1984) ...................................................................... 14

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) ........................................................... 20

*Bennett v. Spear*, 520 U.S. 154 (1997) ..................................................................... 14

*Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014) .......................................................... 15

*Brenner v. Scott*, 4:14cv107-RH/CAS, Order (N.D. Fla. Mar. 30, 2016) .................................... 17

*Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, 2011 WL 710693 (S.D. Miss. Feb. 3, 2011) ........ 12

*Campaign for S. Equal. v. Bryant ("CSE v. Bryant I")*,
    64 F. Supp. 3d 906 (S.D. Miss. 2014) ........................................................... passim

*Campaign for S. Equal. v. Bryant ("CSE v. Bryant II")*, 791 F.3d 625 (5th Cir. 2015) ............... 1

*Campaign for S. Equal. v. Miss. Dep't of Human Servs. ("CSE v. MDHS")*,
    No. 3:15CV578-DPJ-FKB, 2016 WL 1306202 (S.D. Miss. Mar. 31, 2016) ........ 14, 16, 17, 20

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) ................................................... 11

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258 (5th Cir. 2015) .......................... 9

*De Leon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. 2014) ................................................ 19, 20

*Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514 (5th Cir. 2014) .......................... 9

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................... 2

*Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ................... 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ................. 8

*Gilbert v. Donahoe*, 751 F.3d 303 (5th Cir. 2014) ....................................................... 8

*Heckler v. Mathews*, 465 U.S. 728 (1984) ................................................................. 18

*Ivy v. Williams*, 781 F.3d 250 (5th Cir. 2015) .............................................................. 15

*K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010) ......................................................... 14, 15

*LaRoque v. Holder*, 650 F.3d 777 (D.C. Cir. 2011) ...................................................... 13

*Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ....................................................... 15

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) ...................................................................... 14

*Lee v. Verizon Commc'ns, Inc.*, 623 F. App'x 132 (5th Cir. 2015) ............................. 11

*Lee v. Weisman*, 505 U.S. 577 (1992) .......................................................................... 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... 9, 11, 13

*Marie v. Moser*, 65 F. Supp. 3d 1175 (D. Kan. 2014) ................................................. 15

*Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996) ........................................................ 13

*McCardell v. U.S. Dep't of Hous. & Urban Dev.*, 794 F.3d 510 (5th Cir. 2015 ................... 12, 13

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
    508 U.S. 656 (1993) ...................................................................................... 10

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) ..................................................... passim

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) ....................................... 15

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
    748 F.3d 583 (5th Cir. 2014) ......................................................................... 9

*Roe v. Patton*, No. 2:15-CV-00253-DB, 2015 WL 4476734 (D. Utah July 22, 2015)............... 17

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ........................ 8

*Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545 (5th Cir. 1993) ...................... 16

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334(2014) ........................................ 11

*Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 Fed. Appx. 210 (5th Cir. 2008) ...................... 10

*Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) ............................... 15

*Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630 (5th Cir. 2012) ......................... 9, 10

*United States v. Windsor*, 133 S. Ct. 2675 (2013) ......................................... 1, 17, 18

*Waters v. Ricketts*, No. 8:14CV356, 2016 WL 447837 (D. Neb. Feb. 4, 2016).......................... 17

*Wolf v. Walker*, No. 14–CV–64–BBC, 2014 WL 1729098 (W.D. Wis. Apr. 30, 2014) ............. 15

*Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411 (5th Cir. 2001) ....................... 16

**Statutes**

Mississippi House Bill 1523, the Protecting Freedom of Conscience from Government
    Discrimination Act ............................................................................................................ passim

MS Code. § 11-61-1(5)(b) .................................................................................................. 4

**Other Authorities**

11A Charles Alan Wright et al.*, Fed. Prac. & Proc.* § 2949 (2d ed., Apr. 2013 update) .............. 2

Jennifer Dobner, *Plaintiffs from Utah's landmark gay marriage case tie the knot*,
    The Salt Lake Tribune (May 24, 2015) ................................................................................ 13

Miss. Coll. of Law Legislative History Project, HB1523: Protecting Freedom of Conscience
    from Government Discrimination Act ("HB 1523 Legislative History"),
    http://law.mc.edu/legislature/bill_details.php?id=4621&session=2016S ....................... 2, 6, 19

OX Group, *Press Release: Wedding Spend Reaches All-Time High As Couples Look To Make
    The Ultimate Personal Statement, According To The Knot 2015 Real Weddings Study*
    (Apr. 5, 2016) ...................................................................................................................... 13

**Constitutional Provisions**

Miss. Const. § 263A ........................................................................................................... 2

## INTRODUCTION

This is a pre-enforcement challenge to Mississippi House Bill 1523, the Protecting Freedom of Conscience from Government Discrimination Act ("HB 1523"). In *Obergefell v. Hodges*, the Supreme Court held that the Due Process and Equal Protection Clauses of the Fourteenth Amendment "do[] not permit [a] State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex." 135 S. Ct. 2584, 2607 (2015). The Fifth Circuit has emphatically declared that *Obergefell* "is the law of the land and, consequently, the law of this circuit and should not be taken lightly by actors within the jurisdiction of this court." *Campaign for S. Equal. v. Bryant ("CSE v. Bryant II")*, 791 F.3d 625, 627 (5th Cir. 2015) (footnote omitted).

On its face, HB 1523 violates the Fourteenth Amendment by subjecting the lawful marriages of same-sex couples to different terms and conditions than those accorded to different-sex couples. By creating a separate and unequal set of laws applying only to the marriages of same-sex couples, HB 1523 "impose[s] a disadvantage, a separate status, and so a stigma upon" all married same-sex couples in Mississippi. *United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013).

Plaintiffs seek a preliminary injunction to preserve the status quo and prevent the irreparable injury Plaintiffs would suffer unless Defendant is enjoined from enforcing the statute. Unless this Court issues an injunction, HB 1523 will become effective on July 1, 2016. *See* HB 1523 § 11.

**BACKGROUND**[1]

<u>**HB 1523**</u>

In *Obergefell*, the Supreme Court held that the Due Process and Equal Protection Clauses of the Fourteenth Amendment "do[] not permit [a] State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex." 135 S. Ct. at 2607. As a result of *Obergefell*, Mississippi officials, in their official capacity, have been permanently enjoined from enforcing Section 263A of the Mississippi Constitution, which provides that "Marriage may take place and may be valid under the laws of this State only between a man and a woman." *Campaign for S. Equal. v. Bryant*, No. 3:14–CV–818–CWR–LRA (S.D. Miss.).

HB 1523 was passed as a direct response to *Obergefell*,[2] and incorporates virtually the same language contained in Mississippi's defunct constitutional marriage ban. Whereas Section 263A of the Mississippi Constitution provided that "Marriage may take place and may be valid under the laws of this State only between a man and a woman," HB 1523 authorizes certain types of discrimination against same-sex couples based on the religious or moral conviction that

---

[1] On a motion for preliminary injunction, courts take as true the "well-pleaded allegations of [plaintiff's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976); *accord* 11A Charles Alan Wright et al*., Fed. Prac. & Proc.* § 2949 (2d ed., Apr. 2013 update) ("[T]he written evidence [in a preliminary injunction proceeding] is presumed true if it is not contradicted.").

[2] Senator Branning told the Senate that "this legislation was brought forward as a result of the United States Supreme Court decision Obergefell last summer that legalized same-sex marriage" and provides "a solution to the crossroads we find ourselves in today as a result of *Obergefell*." Miss. Coll. of Law Legislative History Project, HB1523: Protecting Freedom of Conscience from Government Discrimination Act ("HB 1523 Legislative History"), Video of Senate Proceedings on Mar. 30, 2016 (Statement of Sen. Branning at 2:20, 4:30), http://law.mc.edu/legislature/bill_details.php?id=4621&session=2016S. Similarly, Representative Gipson told the House: "What this bill does in essence is add an additional layer of protection that currently does not exist in the post-*Obergefell* decision that came from the Supreme Court in June of 2015, which legalized same-sex marriage throughout the United States, including in a majority of States that had adopted the traditional definition and only recognized marriages between one man and one woman." HB 1523 Legislative History, Video of House Proceedings on Feb. 19, 2016 (Statement of Rep. Gipson at 6:25).

"Marriage is or should be recognized as the union of one man and one woman."  HB 1523 §

2(a).[3]

HB 1523 denigrates and delegitimizes the marriages of same-sex couples by authorizing

discrimination against them in a sweeping variety of contexts.

- Religious organizations—broadly defined as any "religious group, corporation, association, school or educational institution, ministry, order, society or similar entity, regardless of whether it is integrated or affiliated with a church or other house of worship"—can refuse to provide goods and services to married same-sex couples for any event "recogni[zing]" their marriage.  HB 1523 §§ 3(1)(a), 9(4).

- Those organizations can also fire employees for marrying a spouse of the same sex and can refuse to rent or sell housing to them.  HB 1523 §§ 3(1)(b)-(c).

- If those organizations provide foster care services, they can turn away same-sex couples seeking to adopt even if they are related to the foster child.  HB 1523 § 3(2).  And if a same-sex couple's child is taken into foster care, the foster parents can tell the couple's child that her parents are an abomination without having the foster placement revoked.  HB 1523 § 3(3).

- Anyone working in the field of health care, from receptionists to physicians, can refuse to interact with same-sex couples seeking counseling or fertility services. HB 1523 § 3(4).

- If a licensed professional in any field of work violates professional standards of care by discriminating against same-sex couples, State and local governments must allow that individual to continue practicing in Mississippi even if his professional license is suspended or revoked.  HB 1523 § 4(2).

- And for-profit businesses can refuse to sell jewelry, flowers, greeting cards, or a cake for someone to give to her same-sex spouse on their wedding anniversary or for a child to give to her two moms on Mothers' Day.  HB 1523 § 3(5).

Through these sweeping exclusions, HB 1523 subjects same-sex married couples in Mississippi

to a lifetime of potentially humiliating denials of ordinary assistance and places a badge of

---

[3] The statute further bolsters the discriminatory treatment of same-sex couples by authorizing discrimination based on the religious or moral conviction that "Sexual relations are properly reserved to such a marriage" (i.e. marriage between a man and a woman).  HB 1523 § 2(b).  And the statute provides that in determining whether or not the married couple are members of the same sex, certain individuals and organizations may act based on the religious or moral conviction that "Man (male) and woman (female) refer to a person's immutable biological sex as objectively determined by anatomy and genetics at the time of birth."  HB 1523 § 2(c).

inferiority upon their marriages each time they celebrate one of the ordinary incidents of family life.

HB 1523 even authorizes government officials to "recuse" themselves from providing marriage licenses to same-sex couples or solemnizing their marriage. Different-sex couples who wish to marry in Mississippi may obtain a marriage license from any county clerk's office in the State, and in each of those clerk's offices, the employees have no legal right to recuse themselves from issuing marriage licenses to a different-sex couple based on religious beliefs or moral convictions. In contrast, if HB 1523 goes into effect, the Mississippi State Registrar of Vital Records will receive written notices from governmental employees who wish to recuse themselves from issuing marriage licenses to same-sex couples, and the Registrar will keep a record of all recusals. HB 1523 § 3(8)(a). In effect, the Registrar has a duty under the statute to maintain a "no same-sex couples allowed" list of governmental officials who refuse to provide marriage licenses to Plaintiffs and other same-sex couples but who will provide the same licenses to every other type of couple entering into a legal marriage. Same-sex couples are thus relegated to a more limited set of governmental employees willing to issue them marriage licenses.

Although HB 1523 was dubbed by the legislature as the "Protecting Freedom of Conscience from Government Discrimination Act," the statute does not protect all religious or moral beliefs, or even all religious or moral beliefs related to marriage. Such beliefs already receive robust protections under Mississippi's Religious Freedom Restoration Act ("RFRA"), which provides that any governmental burdens on an individual's "ability to act or the refusal to act in a manner that is substantially motivated by one's sincerely held religious belief" must be justified by a compelling governmental interest and be the least restrictive means of achieving that interest. MS Code. § 11-61-1(5)(b). In contrast, HB 1523 provides complete immunity for

certain individuals and organizations to act or refuse to act based on their religious or moral belief that marriage is or should be recognized as the union of "one man and one woman," that sexual relations should be limited to marriages between "one man and one woman," and that the definition of "man" and "woman" should be determined by sex assigned at birth. *See* HB 1523 § 2. HB 1523 creates an absolute right for those individuals and organizations to act or refuse to act based on these particular religious or moral beliefs regardless of whether the burden on religious beliefs would otherwise be justified under Mississippi's RFRA. *See* HB 1523 § 10 (expressly excluding the state from Mississippi's RFRA). When acting or refusing to act based on such beliefs, HB 1523 immunizes those individuals and organizations from all legal liability, including liability through common law tort or breaches of contract. *See* HB 1523 §§ 8, 9(b) (preempting "any ordinance, rule, regulation, order, opinion, decision, practice or other exercise of the state government's authority" and defining "state government" to include courts). Indeed, if a same-sex couple seeks to bring such an action, HB 1523 makes the same-sex couple liable for damages to the individual or organization that has discriminated against them. *See* HB 1523 §§ 5-6, 9(b) (providing that "[a] person may assert a violation of this act as a claim against the state government," authorizing damages for such claims, and defining "state government" to include "[a]ny private party or third party suing under or enforcing a law, ordinance, rule or regulation of the state or political subdivision of the state").

HB 1523 does not authorize discrimination against any marriage of a different-sex couple based on religious or moral objections. Many individuals and organizations have strong religious and moral objections to interfaith marriages. Many individuals and organizations have strong religious and moral objections to recognizing a second marriage following a civil divorce. Some individuals and organizations continue to have strong religious and moral objections to

marriages between people of different races.  But HB 1523 does not provide any authorization to act or refuse to act based on those religious or moral beliefs.[4]

**Plaintiffs**

The ACLU and ACLU of Mississippi advocate for the equal rights of lesbian, gay, bisexual and transgender ("LGBT") people and the freedom to live openly in a fair and just society.  Riley-Collins Decl. ¶ 4.  Through their litigation, advocacy, and lobbying efforts, they have ensured LGBT persons' freedom of expression and defended them against harassment.  *Id.* The ACLU and ACLU of Mississippi plan to continue to defend the rights and liberties of the LGBT residents of Mississippi. *Id.*

The ACLU of Mississippi has approximately 1,000 members and continues to grow.  *Id.* ¶ 2.  The ACLU of Mississippi currently has several members who are in committed relationships with a same-sex partner and plan to marry within the next three years, including at least one member who plans to marry his or her partner in 2017.  *Id.* ¶ 3.

Plaintiffs Nykolas Alford and Stephen Thomas are Mississippi residents who are engaged to be married.  Alford Decl. ¶¶ 4-5; Thomas Decl. ¶¶ 4-5.  Mr. Alford and Mr. Thomas were both born in Mississippi.  Alford Decl. ¶ 4; Thomas Decl. ¶ 4.  When they first started dating in 2012, neither of their families approved of their relationship or of the fact that they were gay.  Alford Decl. ¶ 6; Thomas Decl. ¶ 6.  Over the years, however, most of their family members have changed their minds.  Alford Decl. ¶ 6; Thomas Decl. ¶ 7.  They have become supportive of Mr. Alford and Mr. Thomas, and of their relationship.  Alford Decl. ¶ 6; Thomas Decl. ¶ 7.

---

[4] Indeed, when asked whether the bill would authorize individuals to refuse services based on religious objections to interracial couples marrying, Senator Branning responded:  "This bill specifically addresses same-sex marriage . . . . It's very narrowly drafted."  HB 1523 Legislative History, Video of Senate Proceedings on Mar. 30, 2016 (Statement of Sen. Branning at 11:25), http://law.mc.edu/legislature/bill_details.php?id=4621&session=2016S.

When marriage equality came to Mississippi, Mr. Alford and Mr. Thomas were thrilled. Alford Decl. ¶ 9; Thomas Decl. ¶ 9. They became engaged on Christmas Eve in 2014, one month after the district court in *Campaign for S. Equal. v. Bryant ("CSE v. Bryant I")*, 64 F. Supp. 3d 906, 917 (S.D. Miss. 2014), struck down Mississippi's laws prohibiting same-sex couples from marrying. Alford Decl. ¶ 7; Thomas Decl. ¶ 7. Mr. Alford and Mr. Thomas have similar morals and a strong sense of what is right and wrong. Alford Decl. ¶ 6; Thomas Decl. ¶ 7. They support each other, understand each other, and build each other up. Alford Decl. ¶ 6; Thomas Decl. ¶ 7. They are excited to take their vows—before each other, their families, and God. Alford Decl. ¶ 7; Thomas Decl. ¶¶ 7, 12.

Mr. Alford and Mr. Thomas plan to marry within the next three years, after they complete their undergraduate education and obtain bachelor's degrees. Alford Decl. ¶ 8; Thomas Decl. ¶ 8. Mr. Alford has an associate's degree in broadcast communications, and he will be returning to college in January 2017 for a bachelor's degree in communications with a minor in theater. Alford Decl. ¶ 8; Thomas Decl. ¶ 8. Mr. Thomas completed several college credits after graduating high school, and he will be returning to college in August 2016 for a bachelor's degree with a major in music. Alford Decl. ¶ 8; Thomas Decl. ¶ 8. Mr. Alford and Mr. Thomas plan to marry within the next three years even if one of them is unable to finish his education by then as a result of some unforeseen circumstance. Alford Decl. ¶ 8; Thomas Decl. ¶ 8.

When Mississippi enacted HB 1523 it was heartbreaking for Mr. Alford and Mr. Thomas and felt like a slap in the face. Alford Decl. ¶ 10; Thomas Decl. ¶ 9. HB 1523 gives people a right to treat their marriage differently than the marriages of everyone else, which makes Mr. Alford and Mr. Thomas feel that their relationship is being treated as inferior and unequal to the relationships of different-sex couples. Alford Decl. ¶¶ 10-11; Thomas Decl. ¶¶ 9-12. For Mr.

Alford and Mr. Thomas, HB 1523 feels like a new Jim Crow law for gay people. Alford Decl.

¶¶ 10-11; Thomas Decl. ¶¶ 9-12.

As a result of HB 1523, Mr. Alford and Mr. Thomas, ACLU of Mississippi members, and other same-sex couples seeking to marry after July 1, 2016, will be subject to a separate and unequal set of rules that do not apply to different-sex couples. Every other couple seeking to legally marry can obtain a marriage license from any employee at the county clerk's office responsible for issuing marriage licenses. But as a result of HB 1523, government officials can "recuse" themselves from issuing a marriage license to Mr. Alford and Mr. Thomas or ACLU of Mississippi members solely because they disapprove of their relationship as a same-sex couple. This unequal treatment feels especially degrading because it is part of a second-class status that their relationship will be subjected to for the rest of their lives under HB 1523. Alford Decl. ¶ 11; Thomas Decl. ¶ 11. That second-tier status tells all persons with whom same-sex couples interact that their marriage is less worthy than the marriages of others.

## ARGUMENT

### I. Plaintiffs Have Article III Standing.

"In order to establish standing, a 'plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Gilbert v. Donahoe,* 751 F.3d 303, 312 (5th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

"[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006). Once the court determines that one of the plaintiffs has standing, the court

"need not consider the issue of standing as it relates to the remaining plaintiffs." *Planned*

*Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014).

A.    **Plaintiffs Will Suffer a "Concrete and Particularized" "Injury in Fact" if
        HB 1523 Is Enforced.**

Under Supreme Court and Fifth Circuit precedent, the Registrar's enforcement of HB

1523 inflicts a "concrete and particularized" injury in fact on Plaintiffs and other same-sex

couples.  The Fifth Circuit has explained that "if a plaintiff is an object of a government

regulation, then that plaintiff ordinarily has standing to challenge that regulation." *Duarte ex rel.*

*Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 518 (5th Cir. 2014) (citing *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 561-62 (1992)).  "Whether someone is in fact an object of a regulation

is a flexible inquiry rooted in common sense." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,

779 F.3d 258, 265 (5th Cir. 2015).

The marriages of same-sex couples are one of "the objects" of HB 1523, as enforced by

the Registrar, because HB 1523 "targets" those marriages "for the exclusion of benefits bestowed

on similar parties." *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012).

Under HB 1523, different-sex couples who wish to marry in Mississippi will still be able to

obtain a marriage license from any county clerk's office in the State, and no one will have the

legal right to recuse themselves from issuing marriage licenses to them based on religious beliefs

or moral convictions.  In contrast, if HB 1523 goes into effect, Plaintiffs and other same-sex

couples will be relegated to a more limited set of governmental employees willing to issue them

marriage licenses. "There can be no dispute that the plaintiffs are the object of the government

action" when they are explicitly singled out by the text of the statute for different treatment. *Id.*[5]

---

[5] As discussed, *infra*, Plaintiffs' claims are sufficiently concrete and imminent for purposes of
establishing standing in this pre-enforcement challenge even though they do not know in advance which
governmental officials will choose to recuse themselves from issuing them a marriage license. *See*

Moreover, this unequal treatment inflicts constitutional injury on Plaintiffs and other same-sex couples even if the recusals do not impede or delay their ability to obtain marriage licenses. "Discriminatory treatment at the hands of the government is an injury long recognized as judicially cognizable. And such injury is recognizable for standing irrespective of whether the plaintiff will sustain an actual or more palpable injury as a result of the unequal treatment under law or regulation." *Id.* (quoting *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 Fed. Appx. 210, 218 (5th Cir. 2008)). "Such discrimination can constitute an injury because it positions similar parties unequally before the law; no further showing of suffering based on that unequal positioning is required for purposes of standing." *Id.* (quoting *Tex. Cable & Telecomms. Ass'n*, 265 Fed. Appx. at 218 (alterations incorporated)). "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).

In this case, the denial of unequal treatment also imposes an unconstitutional stigma on Plaintiffs, ACLU of Mississippi members, and other same-sex couples. "Stigmatic injury stemming from discriminatory treatment is sufficient to satisfy standing's injury requirement if the plaintiff identifies some concrete interest with respect to which he or she is personally subject to discriminatory treatment and that interest independently satisfies the causation requirement of standing doctrine." *CSE v. Bryant I*, 64 F. Supp. 3d at 917 (quoting *Bostic v. Schaefer*, 760 F.3d 352, 372 (4th Cir. 2014)). The stigma in this case is further enhanced by the fact that the Registrar's "no same-sex couples allowed" list is just one part of a comprehensive legal regime created by HB 1523 that will continue to impose separate and unequal treatment on Plaintiffs and

---

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (finding standing based on likelihood that plaintiff will bid on future construction contracts at least once per year even though it was impossible to know in advance what specific contracts would be available for bidding).

other same-sex couples over the course of their lives.  Alford Decl. ¶ 11; Thomas Decl. ¶ 11.

Whenever Plaintiffs celebrate their anniversary, for-profit businesses will have an absolute right

to refuse to provide them goods and services.  If Plaintiffs seek to adopt a child out of foster care,

adoption agencies have an absolute right to turn them away because they are a same-sex couple.

If Plaintiffs seek fertility services, any hospital employee from the janitor to the obstetrician may

refuse to interact with them because they are a same-sex couple.  If Plaintiffs have a child, the

school guidance counselor could tell their child that his or her parents' marriage is an

abomination or refuse to provide any counseling services to their child at all.

     Plaintiffs have standing to prevent the injury in fact they will experience by being

subjected to this separate and unequal legal regime.

    **B.**    **Plaintiffs' "Injury in Fact" Is "Imminent" and Not "Conjectural or Hypothetical."**

     Plaintiffs' injury in fact is also sufficiently "imminent" to warrant injunctive relief.

Under Supreme Court and Fifth Circuit precedent, "imminence" is an "elastic concept" designed

to "ensure that the alleged injury is not too speculative for Article III purposes."  *Lujan*, 504 U.S.

at 564 n.2.  Plaintiffs seeking injunctive relief to prevent future injury do not have to establish

that "it is literally certain that the harms they identify will come about."  *Clapper v. Amnesty Int'l

USA*, 133 S. Ct. 1138, 1150 n.5 (2013).  Instead, "[a]n allegation of future injury may suffice if

the threatened injury is 'certainly impending,' or there is a 'substantial' risk that the harm will

occur."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation

marks omitted); *accord Lee v. Verizon Commc'ns, Inc.*, 623 F. App'x 132, 147 (5th Cir. 2015).

     Under Fifth Circuit precedent, future injury is sufficiently imminent and non-speculative

if the "asserted injury would be concretely felt in the logical course of probable events flowing

from an unfavorable decision by this court."  *McCardell v. U.S. Dep't of Hous. & Urban Dev.*,

794 F.3d 510 (5th Cir. 2015). In making this assessment, "temporal remoteness is but one factor to consider in the broader inquiry of whether a plaintiff's alleged injuries are sufficiently certain and/or imminent." *Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, 2011 WL 710693, at *10 (S.D. Miss. Feb. 3, 2011). The harm must occur "in the relatively near future." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995). But Article III "requires only that the anticipated injury occur with[in] some fixed period of time in the future, not that it happen in the colloquial sense of soon or precisely within a certain number of days, weeks, or months." *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008). *Cf. Lee v. Weisman*, 505 U.S. 577, 584 (1992) (finding "a live and justiciable controversy" even though the alleged injury-causing event was likely to occur at plaintiff's high school graduation, which was several years away when the complaint was filed); *Adarand*, 515 U.S. at 212 (finding standing based on likelihood that plaintiff will bid on future construction contracts at least once per year without identifying any particular contract for which plaintiff intended to bid).

Mr. Alford and Mr. Thomas submitted declarations stating that they are formally engaged and plan to marry within three years, after they complete their undergraduate education and obtain bachelor's degrees. Alford Decl. ¶ 8; Thomas Decl. ¶ 8. Mr. Alford has an associate's degree in broadcast communications, and he will be returning to college in January 2017 for a bachelor's degree in communications with a minor in theater. Alford Decl. ¶ 8. Mr. Thomas has already completed several college credits, and he will be returning to college in August 2016 for a bachelor's degree with a major in music. Thomas Decl. ¶ 8. Moreover, they plan to marry within the next three years even if one of them is unable to finish his undergraduate education by then as a result of some unforeseen circumstance. Alford Decl. ¶ 8; Thomas Decl. ¶ 8.[6]

---

[6] The imminence of Plaintiffs' injury must also be assessed in light of the nature of their claims. According to a recent study conducted by the XO Group, the average length of engagement for couples

Plaintiffs' marriage plans are far more concrete and time-bound than the alleged travel plans that were found insufficient in *Lujan*. The Supreme Court in *Lujan* held that "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of" standing. 504 U.S. at 564; *see Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996) ("In *Lujan*, the Court emphasized that vague expressions of a hope to observe animals, in remote countries half-way around the world, 'someday'" were insufficient.) In contrast, Plaintiffs' declarations reflect plans to marry a specific person within a specific time period in the near future—not speculative vague hopes of marrying some future romantic partner at some point "in this lifetime." *Lujan*, 504 U.S. at 565 n.2. These concrete plans to marry one another within a fixed period of time easily establish that an "asserted injury would be concretely felt in the logical course of probable events flowing from an unfavorable decision by this court," which is all Article III requires. *McCardell*, 794 F.3d at 520.[7]

---

marrying in 2015 was over fourteen months long. *See* OX Group, *Press Release: Wedding Spend Reaches All-Time High As Couples Look To Make The Ultimate Personal Statement, According To The Knot 2015 Real Weddings Study* (Apr. 5, 2016), http://ir.xogroupinc.com/investor-relations/press-releases/press-release-details/2016/Wedding-Spend-Reaches-All-Time-High-As-Couples-Look-To-Make-The-Ultimate-Personal-Statement-According-To-The-Knot-2015-Real-Weddings-Study/default.aspx#sthash.IBUDoyft.dpuf. Although Plaintiffs' injury in fact will occur at the time they receive their wedding licenses, the stigmatic effects of that injury will be felt long in advance and cast a shadow over the entire engagement and wedding-planning process. *Cf. LaRoque v. Holder*, 650 F.3d 777, 788 (D.C. Cir. 2011) (finding standing for candidate to challenge election procedure even though campaign had not yet begun and election was nineteen months away). Moreover, a couple challenging HB 1523 may be forced to litigate their claims for years before final judgment is entered and appeals are exhausted. *See* Jennifer Dobner, *Plaintiffs from Utah's landmark gay marriage case tie the knot*, The Salt Lake Tribune (May 24, 2015), http://www.sltrib.com/news/2548050-155/plaintiffs-from-utahs-landmark-gay-marriage (describing how plaintiffs filed complaint in March 2013 and married in May 2015).

[7] As discussed, *infra*, ACLU of Mississippi has at least one member who plans to marry in 2017 and will experience an injury in fact that is even more "imminent" than the injuries of Mr. Alford and Thomas.

**C.    Plaintiffs' Injury Is Traceable to Defendant and Will Be Redressed By Enjoining Defendant from Enforcing HB 1523.**

Plaintiffs' injury is also "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Campaign for S. Equal. v. Miss. Dep't of Human Servs. ("CSE v. MDHS")*, No. 3:15CV578-DPJ-FKB, 2016 WL 1306202, at *5 (S.D. Miss. Mar. 31, 2016) (quoting *Allen v. Wright,* 468 U.S. 737, 751 (1984)). "The causation element does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011). The defendant does not have to be "the sole participant in the application of the challenged statute," *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010), or the "very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). As long as the defendant plays some enforcement role that "would contribute to Plaintiffs' harm," the requirement of traceability is satisfied." *K.P.*, 627 F.3d at 123.

In this case, Plaintiffs' injury is fairly traceable to Defendant because governmental employees seeking to recuse themselves from issuing marriage licenses to same-sex couples must "provide prior written notice to the State Registrar of Vital Records who shall keep a record of such recusal." HB 1523 § 3(8)(a). The Registrar further participates in enforcing HB 1523 against the Plaintiffs and other same-sex couples by keeping a record of all recusal notices because the existence of that public record insulates the recused employee from liability for his or her actions. In effect, the Registrar has a duty under the statute to maintain a "no same-sex couples allowed" list of governmental officials who refuse to provide marriage licenses to Plaintiffs and other same-sex couples but who will provide the same licenses to every other type of couple entering into a legal marriage. Even though the Registrar is not the "last step in the chain of causation," *Bennett*, 520 U.S. at 169, she is a critical link in the chain. *Cf. Ivy v.*

*Williams*, 781 F.3d 250, 253 (5th Cir. 2015) (holding that driver education schools' failure to comply with the Americans with Disabilities Act were "fairly traceable" to the Texas Education Agency's "failure to deny licenses to driver education schools that violate the ADA").[8]

For similar reasons, Plaintiffs have also established redressability. "A plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." *K.P.*, 627 F.3d at 123-24 (quoting *Larson v. Valente*, 456 U.S. 228, 243 (1982)). If Defendant refused to accept and record these recusal notices, it would nullify the entire process of opting out from issuing marriage licenses, or at least make the process substantially more difficult to enforce. Refusing to record the recusal notices would also remove some of the unconstitutional stigma imposed on Plaintiffs and other same-sex couples seeking to marry.

> **D.  The ACLU of Mississippi Has Associational Standing on Behalf of Its Members.**

"Associational standing is a three-part test: (1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). The ACLU of Mississippi has met all three requirements for associational standing in this case.

---

[8] The Registrar's obligations to receive and record recusal notices distinguishes this case from *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc), in which the Plaintiffs sued officials who were found not to have "any duty or ability to do anything" relating to enforcement of the statute. *Id.* at 427. The Registrar has "definite responsibilities relating to the application of" HB 1523, which is all that Article III requires. *K.P.*, 627 F.3d at 123-24; *cf. Bostic*, 760 F.3d at 372 (Virginia's Registrar of Vital Records was a proper defendant in challenge to ban marriage for same-sex couples because she promulgated marriage license application forms); *Marie v. Moser*, 65 F. Supp. 3d 1175, 1191 (D. Kan. 2014) ("[P]laintiffs need not establish that Secretary Moser personally denied their marriage license applications so long as he would play a role in providing their requested relief."); *Wolf v. Walker*, No. 14–CV–64–BBC, 2014 WL 1729098, at *4 (W.D. Wis. Apr. 30, 2014) (Wisconsin state Registrar was a proper defendant because of his official duty to prescribe forms related to acquiring a marriage license).

ACLU of Mississippi members would independently meet the Article III requirements for standing. The Executive Director of the ACLU of Mississippi has submitted a declaration stating that the ACLU of Mississippi currently has several members who are in committed relationships with a same-sex partner and plan to marry within the next three years, including at least one member who plans to marry his or her partner in 2017. Riley-Collins Decl. ¶ 3.[9] For all the reasons that Mr. Alford and Mr. Thomas have standing, these ACLU of Mississippi members would have standing as well. Indeed, the ACLU of Mississippi member who plans to marry next year will experience an injury in fact that is even more "imminent" than the injuries of other plaintiffs. *Cf. Adarand*, 515 U.S. at 212 (finding standing based on likelihood that plaintiff will bid on future construction contracts at least once per year).

In addition, the ACLU of Mississippi's mission to protect the rights of LGBT people "is aligned with its goals in this suit," and "[a]dditional members need not participate because the questions presented are legal, not factual." *CSE v. Bryant I*, 64 F. Supp. 3d at 918; *accord CSE v. MDHS*, 2016 WL 1306202, at *18. The ACLU of Mississippi therefore has associational standing to bring claims against the Registrar on behalf of its members.

## II. Plaintiffs' Motion for Preliminary Injunction Should Be Granted

In order to obtain a preliminary injunction "Plaintiffs must demonstrate four familiar requirements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable injury; (3) that the injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction is in the public interest. *CSE v. MDHS*, 2016 WL 1306202, at *12 (quoting *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001) (alterations incorporated).

---

[9] "[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993).

**A.     Plaintiffs Have Established a Substantial Likelihood of Success.**

HB 1523 explicitly subjects the legal marriages of same-sex couples to different terms and conditions than the legal marriages of different-sex couples.  For that reason alone, it is unconstitutional on its face.

In *Obergefell*, by requiring access to marriage for same-sex couples "on the same terms and conditions as accorded to" different-sex couples, the Supreme Court extended its holding not only to the ability to marry, but also to "all the benefits afforded to opposite-sex couples."  135 S. Ct. at 2604.  *Obergefell* explained that "the fundamental character of the marriage right" under the Constitution includes equal access to the "symbolic recognition and material benefits to protect and nourish the union."  *Id.* at 2601.  The Supreme Court also expressly declined to "stay its hand to allow slower, case-by-case determination of the required availability of specific public benefits to same-sex couples."  *Id.* at 2606.  In the wake of *Obergefell*, court after court has held that the decision prohibits States from treating married same-sex couples differently than married different-sex couples with respect to any of the terms and conditions of legal marriage.  *See CSE v. MDHS*, 2016 WL 1306202, at *14 (adoption); *Brenner v. Scott*, 4:14cv107-RH/CAS, Order 6-7 (N.D. Fla. Mar. 30, 2016), https://aclufl.org/resources/summary-judgment-grimsley-v-scott/ (listing both parents on birth certificates); *Waters v. Ricketts*, No. 8:14-CV-356, 2016 WL 447837, at *4 (D. Neb. Feb. 4, 2016) (listing both parents on birth certificates); *Roe v. Patton*, No. 2:15-CV-00253-DB, 2015 WL 4476734, at *3 (D. Utah July 22, 2015) (establishing parentage through assisted-conception statute).

*Obergefell* further emphasized that providing same-sex couples with anything less than "the same legal treatment as opposite-sex couples" places "the imprimatur of the State itself on an exclusion that soon demeans or stigmatizes" same-sex couples and their families.  135 S. Ct. at 2602.  Indeed, the Supreme Court had already held in *Windsor* that the simple act of treating

married same-sex couples differently than married different-sex couples "impose[s] a disadvantage, a separate status, and so a stigma upon all who enter into same-sex marriages." 133 S. Ct. at 2693. The Supreme Court has long recognized that "[d]iscrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group." *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) (citations omitted).

On its face, HB 1523 flagrantly violates *Obergefell*'s mandate that same-sex couples must receive "the same legal treatment as opposite-sex couples." 135 S. Ct. at 2602. Like the unconstitutional Defense of Marriage Act struck down in *Windsor*, HB 1523 identifies the marriages of same-sex couples as a "subset of state-sanctioned marriages and makes them unequal" to all other types of legal marriages. 133 S. Ct. at 2694. In doing so, HB 1523 violates "the long-established precept that the incidents, benefits, and obligations of marriage are uniform for all married couples within each State, though they may vary, subject to constitutional guarantees, from one State to the next." *Id.* at 2692. The "differentiation demeans the couple," *id.*, and tells "all persons with whom same-sex couples interact, including their own children, that their marriage is less worthy than the marriages of others," *id.* at 2696.

Protecting religious liberty and freedom of conscience is certainly a legitimate governmental interest, but Mississippi must pursue that interest in a manner that provides "the same legal treatment" to the marriages of same-sex couples and the marriages of different-sex couples. *Obergefell*, 135 S. Ct. at 2602. HB 1523 does not authorize discrimination against any marriage of a different-sex couple based on religious or moral objections. Many individuals and

organizations have strong religious and moral objections to interfaith marriages. Many individuals and organizations have strong religious and moral objections to recognizing a second marriage following a civil divorce. Some individuals and organizations continue to have strong religious and moral objections to marriages between people of different races. But HB 1523 does not provide any authorization to act or refuse to act based on those religious or moral beliefs. Mississippi's decision to subject only same-sex couples to discrimination authorized by HB 1523 indicates that the statute creates "instability [that] many opposite-sex couples would deem intolerable in their own lives." *Obergefell*, 135 S. Ct. at 2601.[10]

> *Obergefell* could not be clearer:
>
> [When] sincere, personal opposition [to the marriage of same-sex couples]
> becomes enacted law and public policy, the necessary consequence is to put the
> imprimatur of the State itself on an exclusion that soon demeans or stigmatizes
> those whose own liberty is then denied. Under the Constitution, same-sex couples
> seek in marriage the same legal treatment as opposite-sex couples, and it would
> disparage their choices and diminish their personhood to deny them this right.

*Id.* at 2602. Because HB 1523 does precisely what *Obergefell* forbids, Plaintiffs are substantially likely to prevail on the merits.

### B. Plaintiffs Have Satisfied the Remaining Preliminary Injunction Factors.

Because Plaintiffs have established a substantial likelihood of success on their constitutional claims, they have also satisfied the remaining preliminary injunction factors. "It is well-established that the deprivation of constitutional rights constitutes irreparable harm as a matter of law." *CSE v. Bryant I*, 64 F. Supp. 3d at 950 (internal quotation marks omitted); *accord De Leon v. Perry*, 975 F. Supp. 2d 632, 663 (W.D. Tex. 2014). Moreover, although

---

[10] As noted above, Senator Branning reassured legislators that HB 1523 would not authorize discrimination against interracial couples because "[t]his bill specifically addresses same-sex marriage . . . . It's very narrowly drafted." HB 1523 Legislative History, Video of Senate Proceedings on Mar. 30, 2016 (Statement of Sen. Branning at 11:25), http://law.mc.edu/legislature/bill_details.php?id=4621&session=2016S.

Plaintiffs' injury in fact will occur when they seek their wedding licenses, the stigmatic effects of that injury will be felt long in advance and cast a shadow over the entire engagement and wedding-planning process. *See CSE v. MDHS*, 2016 WL 1306202, at *14 (finding irreparable harm from the "stigmatic and more practical injuries" even before adoption is completed).

Plaintiffs' unconstitutional injuries also outweigh any harms from granting an injunction. "[T]here is no harm from issuing a preliminary injunction that prevents the enforcement of a likely unconstitutional statute." *De Leon*, 975 F. Supp. 2d at 664. "[W]hen the law that voters wish to enact is likely unconstitutional, their interests do not outweigh [the plaintiff's] in having his constitutional rights protected." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).

Similarly, an injunction to prohibit enforcement of an unconstitutional statute is necessarily in the public interest. Because "it is always in the public interest to prevent the violation of a party's constitutional rights," *Awad*, 670 F.3d at 1132, "a preliminary injunction preventing the enforcement of an unconstitutional law serves, rather than contradicts, the public interest;" *De Leon*, 975 F. Supp. 2d at 665. *Accord CSE v. Bryant I*, 64 F. Supp. 3d at 951.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction should be granted.

Respectfully submitted,


/s/ Oliver E. Diaz, Jr.

Joshua A. Block*                              Oliver E. Diaz, Jr., Esq.
Leslie Cooper*                                MSB #6064
AMERICAN CIVIL LIBERTIES UNION                P.O. Box 946
   FOUNDATION                   Madison, MS  39130
125 Broad Street, Floor 17                    769-280-3881
New York, New York  10004                     oliver@oliverdiazlaw.com
212-549-2627
jblock@aclu.org
lcooper@aclu.org


Paloma Wu*                                    *Counsel for Plaintiffs*
AMERICAN CIVIL LIBERTIES UNION OF
MISSISSIPPI FOUNDATION                        *\* Motion for admission pro hac vice to*
233 East Capitol Street                       *follow*
Jackson, Mississippi 39201
601-354-3408
pwu@aclu-ms.org



Dated:  May 10, 2016

CERTIFICATE OF SERVICE

I, Oliver E. Diaz, Jr., counsel for the Plaintiffs in the above-referenced matter, do hereby certify that the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to all parties of record.

This the 10th day of May, 2016.

/s/ Oliver E. Diaz, Jr.