IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Jackson Division

| | |
|---|---|
| NYKOLAS ALFORD and STEPHEN THOMAS; and ACLU OF MISSISSIPPI, <br><br> Plaintiffs, <br><br> v. <br><br> JUDY MOULDER, in her official capacity as MISSISSIPPI STATE REGISTRAR OF VITAL RECORDS, <br><br> Defendant. | Civil No. 3:16-CV-350-DPJ-FKB |

## PLAINTIFFS' REPLY MEMORAMDUM OF LAW
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Under *Obergefell v. Hodges*, same-sex couples seeking to marry are entitled to "the same legal treatment as opposite-sex couples." 135 S. Ct. 2584, 2602 (2015). Nothing more, and nothing less. Defendant's enforcement of HB 1523 will directly subject the marriages of Mr. Alford, Mr. Thomas, and ACLU of Mississippi members ("Plaintiffs") to a different set of rules that do not apply to other legal marriages. Plaintiffs have standing to challenge this injury in fact, and an injunction is necessary to prevent the imminent and irreparable harm that will be caused when a state official places "the imprimatur of the State itself" on moral disapproval of Plaintiffs and their relationships. *Id.*[1]

---

[1] Defendant suggests a successful facial challenge to Defendant's enforcement of HB 1523 does not mean "the entire statute must fall." (Def. Br. 4 n.3.) As explained by Justice Scalia, however, "the facial invalidation of a statute is a logical consequence of the Court's opinion, not the immediate effect of its judgment." *City of L.A.. v. Patel*, 135 S. Ct. 2443, 2457-58 (2015) (Scalia, J., dissenting). In this case, a decision holding that Defendant's enforcement of HB 1523 is unconstitutional because it denies Plaintiffs "the same legal treatment" as different-sex couples would necessarily indicate that the entire statute is unconstitutional for the same reason.

## I. HB 1523 is not a neutral religious accommodation.

On its face HB 1523 explicitly strips same-sex couples of "equal dignity in the eyes of the law." *Id.* at 2608. Unlike Mississippi's Religious Freedom Restoration Act, MS Code. § 11-61-1, and other generally applicable religious accommodation statutes, HB 1523 does not apply equally to the marriages of same-sex couples and the marriages of different-sex couples. The marriages of same-sex couples, and only the marriages of same-sex couples, are singled out as permissible targets for religious objections. This unequal treatment "demeans the couple," and tells "all persons with whom same-sex couples interact . . . that their marriage is less worthy than the marriages of others." *United States v. Windsor*, 133 S. Ct. 2675, 2694, 2696 (2013).

Defendant obliquely attempts to defend HB 1523 as a permissible accommodation of religion (Def. Br. 9-10, 23), but a comparison between HB 1523 and the laws cited by Defendant illustrates just how far HB 1523 departs from traditional religious accommodations. For example, Defendant cites to 42 U.S.C. § 300a-7, which protects healthcare workers from retaliation for refusing to participate in abortion or sterilization procedures (Def. Br. 10), but, unlike HB 1523, that statute applies evenhandedly by also protecting healthcare workers from retaliation when they *do* participate in such procedures. Similarly, Defendant cites *Slater v. Douglas County*, 743 F. Supp. 2d 1188 (D. Or. 2010), for the proposition that a couple is not harmed when a county clerk's office accommodates the religious beliefs of employees by allowing individual clerks to opt out of providing domestic partnership certificates. (Def. Br. 23.) But, even assuming *Slater* was correctly decided, the accommodation statute in that case was Title VII, which protects all forms of religious beliefs equally. *See Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 712 (1985) (O'Connor, J., concurring). Under Title VII (as interpreted by the *Slater* court) clerks would have a similar right to request accommodations

2

allowing them to opt out of providing marriage licenses to interfaith or interracial couples—or any other couple—based on religious beliefs. In contrast, HB 1523 provides an accommodation *only* when an employee objects to the marriage of a same-sex couple and not to any other legal marriage.

The dignitary harm to same-sex couples is not simply that HB 1523 accommodates religious objections to their marriages, but that it accommodates those objections while not accommodating religious objections to the marriages of any different-sex couples. "Especially against a long history of disapproval of their relationships," this unequal treatment "serves to disrespect and subordinate them." *Obergefell*, 135 S. Ct. at 2604. "[T]he necessary consequence is to put the imprimatur of the State itself on an exclusion that soon demeans or stigmatizes" Plaintiffs and other same-sex couples in Mississippi. *Id.* at 2602.

## II. Plaintiffs will suffer a concrete and personalized injury in fact unless an injunction is issued.

Unless a preliminary injunction is issued, Defendant will start enforcing HB 1523 on July 1, 2016. From that day forward, Defendant will be statutorily required to accept and record recusal notices from clerks who object to Plaintiffs' marriages, but not recusal notices from clerks who object to any other lawful marriage. By accepting and recording such recusal notices, Defendant will personally enforce HB 1523's facial classification distinguishing between Plaintiffs and different-sex couples who seek to marry. Even before the first recusal notice arrives, Defendant's legal obligation to accept and record such notices places the State's imprimatur on moral disapproval of Plaintiffs and their wish to marry.

Contrary to Defendant's repeated insistence, Plaintiffs have not argued that their injury in fact is the denial or delay of marriage licenses. Plaintiffs' injury is that their marriage licenses will not receive "the same legal treatment" as the marriage licenses of different-sex couples.

3

*Obergefell*, 135 S. Ct. at 2602. The stigmatic harms resulting from unequal treatment are concrete and personalized injuries that have "long [been] recognized as judicially cognizable." *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012). Indeed, stigmatic harms are "one of the most serious consequences of discriminatory government action." *Allen v. Wright*, 468 U.S. 737, 755 (1984). The intangible nature of the harm does not make it any less "concrete." *Spokeo, Inc. v. Robins*, No. 13-1339, 2016 WL 2842447, at *7 (U.S. May 16, 2016).

On July 1, 2016, Plaintiffs will be "personally denied equal treatment." *Allen*, 468 U.S. at 755. On that day, Defendant's doors will be open for the business of accepting and recording recusal notices exempting clerks from issuing licenses for Plaintiffs' upcoming marriages. Unlike the plaintiffs in *Allen*, Plaintiffs are not mere "concerned bystanders" who allege that they (along with all other LGBT people) are stigmatized indirectly when the government discriminates against *other* same-sex couples. *Id.* at 756. Plaintiffs are directly stigmatized by Defendant's enforcement of a law that personally subjects their constitutionally protected relationships to unequal legal treatment.[2]

Defendant argues that Plaintiffs have failed to allege a "concrete interest" necessary to claim a stigmatic injury because clerks seeking recusal must still "take all necessary steps to ensure that the authorization and licensing of any legally valid marriage is not impeded or delayed as a result of any recusal." (Def. Br. 7, 24-25.) But that argument misunderstands the

---

[2] In a similar vein, Defendant argues that the "objects" of HB 1523 are not Plaintiffs' relationships because the true "objects" of the statute are persons with a sincerely held religious belief or moral conviction that marriages should be limited to different-sex couples. (Def. Br. 19-21.) The Fifth Circuit, however, rejected a similar argument in *Contender Farms, LLP. v. U.S. Dep't of Agriculture*, explaining that the test is "a flexible inquiry rooted in common sense" and that legislation can have multiple "objects." 779 F.3d 258, 265 (5th Cir. 2015) (finding that even though a regulation operated directly on Horse Industry Organizations, the participants in horsing events hosted by those organizations were "as much objects of the [r]egulation as the [organizations] themselves"); *Nat'l Coll. Athletic Ass'n v. Gov. of N.J.*, 730 F.3d 208, 219 (3d Cir. 2013) (holding that law authorizing casino gambling based on NCAA games is "as much directed at the [NCAA's] events as it is aimed at the casinos").

nature of the injury in fact in an equal protection case. Plaintiffs must identify a "concrete interest with respect to which [they] are personally subject to discriminatory treatment," *Allen*, 468 U.S. at 757 n.22, but they do not need to allege that the discriminatory treatment caused a tangible harm, such as delay or denial of a marriage license, because "a discriminatory classification is itself a penalty, and thus qualifies as an actual injury for standing purposes, where a citizen's right to equal treatment is at stake," *Hassan v. City of New York*, 804 F.3d 277, 289-90 (3d Cir. 2015) (quoting *Saenz v. Roe,* 526 U.S. 489, 505 (1999) (internal quotation marks omitted)). The Fifth Circuit in *Time Warner* was crystal clear that "[s]uch discrimination can constitute an injury because it positions similar parties unequally before the law; no further showing of suffering based on that unequal positioning is required for purposes of standing." *Time Warner*, 667 F.3d at 636. *Accord United States v. Hays*, 515 U.S. 737, 744-45 (1995) (plaintiff residing in a "racially gerrymandered district . . . has been denied equal treatment because of the legislature's reliance on racial criteria" even if racial criteria does not result in actual vote dilution); *Davis v. Guam*, 785 F.3d 1311, 1315 (9th Cir. 2015) ("[E]qual treatment under law is a judicially cognizable interest that satisfies the case or controversy requirement of Article III, even if it brings no tangible benefit to the party asserting it."); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) ("For purposes of standing, a denial of equal treatment is an actual injury even when the complainant is able to overcome the challenged barrier"); *Peyote Way Church of God, Inc. v. Thornburgh*, 922 F.2d 1210, 1214 n.2 (5th Cir. 1991) ("[I]llegitimate unequal treatment is an injury unto itself.").[3]

---

[3] Plaintiffs described other types of potential discrimination authorized by HB 1523 (Def. Br. 14) to illustrate why Defendant's enforcement of HB 1523 imposes such a powerful stigma. Plaintiffs do not claim standing based on the likelihood of encountering such discrimination in the future.

Even if Plaintiffs' injury in fact depended on the existence of a clerk who actually files a recusal notice, Plaintiffs would still have standing because there is at least a "substantial risk" that a clerk will file one. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). Defendant argues that the possibility of a clerk choosing to seek recusal is too speculative under *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013). (Def. Br. 16-19.) But the Fifth Circuit has clarified that the future injury in *Clapper* was speculative because it "depended on a long and tenuous chain of contingent events" and "unfounded assumptions." *McCardell v. U.S. Dep't of Hous. & Urban Dev.*, 794 F.3d 510 (5th Cir. 2015). In contrast, it does not require a long chain of unfounded assumptions to predict that at least one county clerk will submit a recusal request. The Mississippi legislature certainly did not think such an assumption was unfounded, or else it would not have passed HB 1523 in the first place. When Representative Gipson presented the bill to the House, he assured his colleagues that "[w]e have had in this State—not hypothetically but in real life—circuit clerks, judges, individuals tasked with these responsibilities, who have these fundamental matters of faith critical to who they are as a person and it violates their conscience." [4] Plaintiffs do not need to speculate that a recusal request will be submitted; they just need to take Representative Gipson at his word.

Moreover, Plaintiffs do not have to allege that they have preexisting plans to procure a marriage license from a particular county clerk office in order to be harmed when a Defendant accepts and records a recusal notice from that clerk's office. Plaintiffs have the right to obtain marriage licenses from any county clerk's office in Mississippi even if their motivation to select one clerk's office instead of another is based on the desire to challenge HB 1523 and not based

---

[4] Miss. Coll. of Law Legislative History Project, HB1523: Protecting Freedom of Conscience from Government Discrimination Act ("HB 1523 Legislative History"), Video of House Proceedings on Feb. 19, 2016 (Statement of Rep. Gipson at 20:10), http://law.mc.edu/legislature/bill_details.php?id=4621&session=2016S.

on some preexisting reason. *See Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) ("[A]nyone who has suffered an invasion of the legal interest . . . may have standing, regardless of his or her motivation in encountering that invasion."); *Pierson v. Ray,* 386 U.S. 547, 558 (1967) (rejecting argument that plaintiffs' rights were not violated because "they went to the Jackson bus terminal for the sole purpose of testing their rights to unsegregated public accommodations").

**III.     Plaintiffs' injury in fact is traceable to Defendant and will be redressed by an injunction against her.**

Defendant's arguments regarding causation and redressability all flow from Defendant's erroneous description of the injury in fact in this case.[5]  Plaintiffs' injury in fact is the stigmatic harm that Plaintiffs will suffer when Defendant deprives them of "the same legal treatment" as the relationships of different-sex couples. *Obergefell*, 135 S. Ct. at 2602.  On the day of enforcement, Defendant will be in the business of accepting and recording recusal notices for issuing licenses for Plaintiffs' marriage—but not for other lawful marriages—thereby branding Plaintiffs' marriage as "less worthy than the marriages of others." *Windsor*, 133 S. Ct. at 2696. An injunction against Defendant would redress these injuries by eliminating at least one form of unequal treatment and lifting some of the stigma that would otherwise be imposed on Plaintiffs.

Moreover, on a practical level, Defendant's maintenance of a list of recused clerks is part of the statutory framework that shields those clerks from liability and may even be a necessary precondition for the clerk to make a legally effective recusal.  Defendant concedes that the validity of a recusal notice that is not recorded by Defendant "cannot be determined at this juncture." Def. Br. 14 n.8.  The possibility that an injunction against Defendant could frustrate the entire recusal scheme provides another reason why the injunction should be granted.

---

[5] Defendant does not contest that she is a proper defendant under *Okpalobi v. Foster*, 244 F. 3d 405 (5th Cir. 2001) (en banc).  (Def. Br. 28 n.24.)

**IV.     Plaintiffs' facial challenge is ripe for adjudication.**

"A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "In the context of a facial challenge, a purely legal claim is presumptively ripe for judicial review because it does not require a developed factual record." *Whole Woman's Health v. Cole*, 790 F.3d 563, 591 (5th Cir.), *modified*, 790 F.3d 598 (5th Cir. 2015), *and cert. granted*, 136 S. Ct. 499 (2015) (quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)).

Plaintiffs' Motion for Preliminary Injunction presents a purely legal challenge that can be decided based on the face of the statute. Defendant's ripeness arguments, like the arguments concerning Plaintiffs' injury in fact, are based on the incorrect assertion that Plaintiffs will not suffer an injury until a specific clerk submits a recusal notice and Plaintiffs are tangibly harmed by the recusal. For all the reasons that Plaintiffs' injury in fact does not depend on these future events, Plaintiffs' claims are ripe for review now.[6]

**V.      Plaintiffs' have satisfied the remaining preliminary injunction factors.**

"Dignitary wounds cannot always be healed with the stroke of a pen." *Obergefell*, 135 S. Ct. at 2606. As discussed in Plaintiffs' opening memorandum, because Plaintiffs are likely to prevail on the merits of their claims, they have satisfied the remaining preliminary injunction factors as a matter of law. Moreover, although some ACLU of Mississippi members plan to marry as soon as next year (Def. Br. 34), the stigmatizing effects from Defendant's enforcement of HB 1523 will be felt long in advance and cast a shadow over the entire engagement and

---

[6] Defendant expressly disclaims any argument that Plaintiffs' injuries are not imminent because their plans to marry are too temporally remote for standing or ripeness. *See* (Def's Mem. 16) ("The time frame in which Plaintiffs might get married is not the operative fact.").

wedding-planning process. *Campaign for S. Equal. v. Miss. Dep't of Human Servs.*, No. 3:15CV578-DPJ-FKB, 2016 WL 1306202, at *4 (S.D. Miss. Mar. 31, 2016).

Defendant's arguments in opposition to the injunction simply underscore why the equities weigh heavily in Plaintiffs' favor. If Defendant is correct and the possibility of county clerks filing recusal notices is a speculative and unfounded assumption, then an injunction preventing Defendant from enforcing those provisions will not harm the State's interest in any meaningful way. In contrast, if Plaintiffs are correct, then an injunction will be essential to protect their equal dignity and to prevent Defendant from inflicting irreparable stigmatizing harm.

## CONCLUSION

For all these reasons, Plaintiffs' motion for preliminary injunction should be granted.

Respectfully submitted,

\_\_\_\_/s/_____

| | |
|---|---|
| Oliver E. Diaz, Jr., Esq.<br>MSB #6064<br>P.O. Box 946<br>Madison, MS 39130<br>769-280-3881<br>oliver@oliverdiazlaw.com | Joshua A. Block*<br>Leslie Cooper**<br>AMERICAN CIVIL LIBERTIES UNION<br>  FOUNDATION<br>125 Broad Street, Floor 17<br>New York, New York 10004<br>212-549-2627 |
| Paloma Wu*<br>AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI FOUNDATION<br>233 East Capitol Street<br>Jackson, Mississippi 39201<br>601-354-3408<br>pwu@aclu-ms.org | jblock@aclu.org<br>lcooper@aclu.org<br><br>*Admitted pro hac vice*<br><br>**Motion for admission pro hac vice to follow* |
| Dated: May 31, 2016 | *Counsel for Plaintiffs* |

# CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2016, I electronically filed the foregoing Reply Memorandum of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following persons at their e-mail address on file with the Court:


Douglas T. Miracle
Office of the Attorney General
Post Office Box 220
Jackson, MS 39205-0220


*Attorney for Defendant*

This day of May 31, 2016.


    /s/ Joshua Block_____
    Joshua Block